IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DUSTIN MIDDENDORF, )
#B85556, )
)
                      Plaintiff, )
)
vs. )    Case No. 17-cv-00538-JPG
)
PHILLIP McLAURN, )
SGT. NICHOLS, )
R. SMITH, )
STRAUB, and )
ST. CLAIR COUNTY MEDICAL STAFF, )
)
                      Defendants. )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Dustin Middendorf, a detainee at St. Clair County Jail ("Jail") located in Belleville, Illinois, brings this action pursuant to 42 U.S.C. § 1983 and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.[1] Plaintiff asserts claims against Jail officials for denying him medication for his mental illness, clean drinking water, access to the courts, and a nutritionally adequate diet, among other things. (Doc. 1, pp. 7-9). He seeks monetary relief against them. (Doc. 1, p. 10).

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in

---

[1] Plaintiff designated this action as one brought pursuant to 42 U.S.C. § 1983 and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, by checking the boxes for both on the standard civil rights complaint form that he used to prepare this suit. Plaintiff does not mention an FTCA claim anywhere else in the Complaint, and he does not name the United States as a defendant. Under the circumstances, the FTCA claim should be considered dismissed from this action.

1

> which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). As part of the screening order, the Court will also consider whether any claims in the Complaint are improperly joined in this action and are subject to severance. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## Complaint

### 1. Denial of Mental Health Treatment

Plaintiff alleges that he was taken into custody and detained at St. Clair County Jail in October 2016. (Doc. 1, p. 7). Prior to his detention, he was diagnosed with bipolar disorder, a mental illness that he describes as being unbearable with medication and indescribable without it. *Id*. A week after he was detained, Plaintiff was screened by the Jail's medical staff. *Id*. He

informed "all parties present" about his "mental health issues," and he requested assistance in acquiring medication. *Id*. Plaintiff's requests were ignored. *Id*.

During the next six months, Plaintiff submitted five sick call requests, twenty kiosk requests, and multiple captain complaints seeking his medication.[2] (Doc. 1, p. 7). He alleges that the nurse, nurse supervisors, doctor, and administration were all aware of his condition and did nothing about it. *Id*. Plaintiff's fiancé called and spoke with the Jail's administration "in the hopes of getting help." *Id*. No help was ever provided. *Id*. Meanwhile, Plaintiff suffered from sleepless nights, unclear thoughts, and feelings of loneliness, nervousness, and depression. *Id*. He complains that "this type of negligence from medical professionals is un[ac]ceptable." *Id*.

**2.  Harassment**

Plaintiff also complains of harassment by various correctional officers. (Doc. 1, p. 8). On March 3, 2017, Officer Straub told Plaintiff he had authority "to do as he pleased" while searching Plaintiff's cell. *Id*. Officer Smith and Lieutenant Prinler took batteries that Plaintiff purchased from the commissary and other personal belongings without any explanation or documentation. *Id*. Officer Wagner called inmates "bitches" over the intercom in March 2017. *Id*. Officer Knipp told another inmate that he "would shoot him in the head." *Id*. As a result of this harassment and the lack of emergency call buttons in the cells, Plaintiff felt unsafe. *Id*.

**3.  Denial of Access to Courts**

Plaintiff also claims that he was denied access to the courts from January until April 2017. (Doc. 1, p. 8). For four months, he requested permission to visit the law library. *Id*. At the time, he was preparing for his criminal trial and also researching "civil issues." *Id*. When he submitted complaints to Sergeant Nichols, the officer either failed to respond to them or told

---

[2] None of these written requests for mental health treatment or medication were included with the Complaint.

Plaintiff that he had no right to access to the law library. *Id*. Sergeant Nichols returned Plaintiff's "captain complaint[s]" without taking any action on them and told Plaintiff he had no right to visit the law library. *Id*. Plaintiff submitted numerous complaints to "C.O. Supervisors but received no help." (Doc. 1, p. 8; Doc. 1-1, pp. 1-6).

**4.    Boil Order**

On February 2, 2017, St. Clair County was allegedly subject to a "boil order." (Doc. 1, p. 9). At 8:00 a.m. on that date, Plaintiff began requesting fresh water. *Id*. Officer Green, who worked at the command center, was unresponsive. *Id*. A nurse who was passing out bottled water with medication refused to give Plaintiff any. *Id*. Officer Smith told Plaintiff that the "administration" said he could drink the water because the boil order was not in effect for St. Clair County. *Id*. When Plaintiff asked why the nurse was passing out bottled water, Officer Smith said that the boil order "was over." *Id*. When Plaintiff asked the nurse if Officer Smith's statements were true, the nurse said, "if he says so." *Id*. Plaintiff began drinking the water. *Id*. At 11:00 a.m., Officer Green used the intercom to instruct inmates not to drink the water. *Id*. Signs to this effect were also posted, and bottled water was distributed at lunch. *Id*.

Plaintiff began suffering from stomach pain and headaches in the hours after drinking the Jail's water. (Doc. 1, p. 9). He submitted sick call slips and "captain complaints" to complain about Officer Smith's actions. *Id*. Plaintiff received no response. *Id*.

**5.    Nutritionally Inadequate Diet**

Plaintiff also claims that Aramark serves inmates a diet that is nutritionally inadequate. (Doc. 1, p. 9). He complains of "low quality, unsanitary, insufficient portions with no fruit." *Id*. Plaintiff alleges that "St. Clair County" is "aware" of the "risks" but continues to do business

with Aramark to save money. *Id*. Phillip McLaurin allegedly approves of Aramark and the actions taken by its supervisor, Mary Robinson Davis. *Id*.

## Discussion

Before the Court considers the claims set forth in the Complaint, it must first determine who is a defendant in this suit. Plaintiff specifically named the following defendants: St. Clair County medical staff (including a nurse and nurse supervisors), Superintendent McLaurn,[3] Sergeant Nichols, Officer Smith, and Officer Straub. (Doc. 1, pp. 1-2). However, he mentions many other individuals in the body of his Complaint, including Lieutenant Prinler, Officer Wagner, Officer Knipp, Officer Green, doctors, and administrators. (Doc. 1, pp. 7-9). Plaintiff did not specifically identify any of these individuals as defendants, and the Court will not consider them as such. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). Accordingly, all potential claims against Lieutenant Prinler, Officer Wagner, Officer Knipp, Officer Green, unidentified doctors, and unidentified administrators are considered dismissed without prejudice from this action.

Turning next to the claims, the Court deems it appropriate to divide the *pro se* action into the following enumerated counts to facilitate the orderly management of future proceedings in this case and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b):

---

[3] Although identified in the case caption as "Phillip McLaurn," this defendant is identified in the statement of claim as "Phillip McLaurin."

**Count 1 -** The Jail's medical staff denied Plaintiff psychotropic medications for his bipolar disorder from October 2016 until May 2017, in violation of Plaintiff's federal constitutional rights.

**Count 2** - Officers Straub and Smith violated Plaintiff's constitutional rights when they harassed him.

**Count 3** - Sergeant Nichols denied Plaintiff access to the courts when he refused to let Plaintiff visit the Jail's law library to conduct research on a pending criminal case and other civil matters from January until April 2017.

**Count 4 -** Officer Smith subjected Plaintiff to unconstitutional conditions of confinement that posed a significant risk of serious harm to his present and future health when he instructed Plaintiff to drink the Jail's tap water on February 2, 2017, while St. Clair County was subject to a "boil order."

**Count 5 -** Superintendent McLaurin approved of the nutritionally inadequate diet Aramark offered inmates at the Jail in 2016-17, in violation of Plaintiff's constitutional rights.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. These designations do not constitute an opinion regarding the merits of the above-referenced claims.

**Severance**

Count 1 involves a claim against the Jail's medical staff (including an unknown nurse and nurse supervisors) for denying Plaintiff psychotropic medication for his bipolar disorder. This claim is unrelated to Counts 2 and 4 against Officers Smith and Straub for harassing Plaintiff and exposing him to contaminated drinking water, Count 3 against Sergeant Nichols for denying Plaintiff access to the courts, and Count 5 against Superintendent McLaurn for authorizing a nutritionally inadequate diet at the Jail. Severance of Counts 2 and 4, Count 3, and Count 5 into separate suits is warranted.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)). Claims against different groups of defendants that do not arise from a single transaction or occurrence (or series of related transactions or occurrences) and also do not share a common question of law or fact may not be joined in the same suit. *See* FED. R. CIV. P. 20(a)(2). A prisoner who files a "buckshot complaint," such as the one filed by Plaintiff, that includes multiple claims against different individuals should not be allowed to avoid "risking multiple strikes for what should have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010) (citing *George*).

The Court has broad discretion when deciding whether to sever claims under Federal Rule of Civil Procedure 21 or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). However, the Seventh Circuit has emphasized the importance of exercising this discretion in appropriate cases and cautioned district courts against allowing inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, -- F. App'x --, 2017 WL 2417889 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them).

Consistent with *George* and Federal Rule of Civil Procedure 21, the Court shall sever Counts 2 and 4 against Officers Smith and Straub, Count 3 against Sergeant Nichols, and Count

5 against Superintendent McLaurn into three separate actions. Each newly severed case shall receive a new case number, and Plaintiff shall be assessed another filing fee for each of the three new cases.

**Count 1**

The Court will now consider the merits of Plaintiff's claim in Count 1 against the Jail's medical staff for denying him psychotropic medication for his bipolar disorder. (Doc. 1, p. 7). According to the allegations, Plaintiff informed the Jail's medical staff about his mental health issues as early as mid-October 2016. *Id*. For the next six months, he asked for help acquiring medication and received none. *Id*. He submitted at least five written requests and twenty kiosk requests for it. *Id*. Plaintiff claims that the medical staff's failure to respond to his requests amounts to negligence. *Id*.

This claim does not survive screening for several reasons. For one thing, a defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). Liability requires personal involvement in a constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The Complaint falls short of demonstrating that any particular defendant was personally involved in the violation of Plaintiff's constitutional right to receive mental health treatment.

Different legal standards apply to medical claims brought by an arrestee (Fourth Amendment), pretrial detainee (Fourteenth Amendment), and prisoner (Eighth Amendment). The Fourth Amendment's "objectively reasonable" standard applies to medical care claims brought by an arrestee who has not yet had a probable cause hearing. *Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013) (citing *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)).

Claims brought by a pretrial detainee are governed by the Fourteenth Amendment, which prohibits punishment. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). Claims brought by prisoners are governed by the Eighth Amendment, which prohibits cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). *But see Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999) (Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'"). A detainee or prisoner seeking to bring a medical claim must show that (1) he suffered from an objectively serious condition which created a substantial risk of harm, and (2) the defendants were aware of that risk and intentionally disregarded it. *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010); *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764-65 (7th Cir. 2002).

The allegations are insufficient to demonstrate that a particular individual disregarded Plaintiff's request for psychotropic medication under any of these standards. Plaintiff more generally asserts that the Jail's medical staff failed to treat his mental health needs for six months, after he met with them and told them about his mental health issues the first week he was at the Jail. He offers no more specific information and does not include copies of any written requests for medication and/or treatment.

A plaintiff need not identify a defendant by name in order to establish his or her personal involvement in a constitutional deprivation. It is enough at the early pleading stage to refer to unknown defendants in generic terms, such as "Defendant Unknown Nurse" or "Defendant Unknown Nurse Supervisor." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). However, the Complaint must still set forth specific allegations describing conduct

of individual prison staff members sufficient to raise a constitutional claim against them. For this reason, the standard civil rights complaint form instructs plaintiffs to "[s]tate . . . when, where, how, and by whom" they felt their constitutional rights were violated. (Doc. 1, p. 5).

In the Complaint, Plaintiff does not clearly indicate when he met with the unknown nurse and each unknown nursing supervisor during the six-month period in question. Plaintiff provides virtually no insight into what he told each defendant about his diagnosis with bipolar disorder, the prescription medication(s) he needed to manage his mental illness, or the symptoms he experienced without it. He offers the Court no additional information in this regard, such as copies of his written requests for treatment. Plaintiff's allegations fall short of stating a claim against these defendants.

Accordingly, Count 1 shall be dismissed. However, the dismissal shall be without prejudice, and Plaintiff may file an amended complaint in this case, if he wishes to pursue Count 1 against the Jail's medical staff (*i.e.*, unknown nurse and nursing supervisors). If he chooses to do so, Plaintiff must comply with the instructions and deadline for filing the First Amended Complaint set forth in the below disposition.

### **Pending Motions**

Plaintiff filed several documents with this Court that require no action, including a Memorandum and Notice to Court (Doc. 9), Declaration and Affidavit (Doc. 10), and Notice that No Discovery Materials Will Be Filed (Doc. 12). He requests no ruling. To the extent he seeks to supplement the Complaint with additional facts and law, his request is denied. The Court does not accept piecemeal amendments to a complaint and has not considered these documents as part of the screening process.

Plaintiff's Motion for Order Compelling Discovery (Doc. 11) is **DENIED**. The defendants have not been served with this lawsuit and are not yet obligated to respond to discovery.

### Disposition

**IT IS ORDERED** that **COUNTS 2** and **4**, which are unrelated to all other claims in this case, are **SEVERED** into a new case against Defendants **OFFICER SMITH** and **OFFICER STRAUB**, which shall be captioned: **DUSTIN MIDDENDORF, Plaintiff v. R. SMITH and STRAUB, Defendants.**

**IT IS ORDERED** that **COUNT 3**, which is also unrelated to all other claims in this case, is **SEVERED** into a new case against Defendant **SERGEANT NICHOLS**, which shall be captioned: **DUSTIN MIDDENDORF, Plaintiff v. SGT. NICHOLS, Defendant.**

**IT IS ALSO ORDERED** that **COUNT 5**, which is unrelated to all other claims in this case, is **SEVERED** into a new case against Defendant **PHILLIP McLAURN**, which shall be captioned: **DUSTIN MIDDENDORF, Plaintiff v. PHILLIP McLAURN, Defendant.**

In each new case, the Clerk is **DIRECTED** to file the following documents:

   (1)   This Memorandum and Order

   (2)   The Original Complaint (Doc. 1)

   (3)   Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 2)

Plaintiff **will be responsible for an additional $350.00 filing fee** in each of the new cases. The claims in the newly severed cases will be screened pursuant to 28 U.S.C. § 1915A after the new case number and judgment assignment are made. No service shall be ordered on the defendant(s) in each newly-severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 1 against Defendant ST. CLAIR COUNTY MEDICAL STAFF (NURSE and NURSING SUPERVISORS)*. This case shall now be captioned: **DUSTIN MIDDENDORF, Plaintiff v. ST. CLAIR COUNTY MEDICAL STAFF (NURSE and NURSING SUPERVISORS), Defendants.**

**IT IS ORDERED** that Defendants **PHILLIP McLAURN, SGT. NICHOLS, R. SMITH,** and **STRAUB** are **DISMISSED** with prejudice from *this* action.

**IT IS ORDERED** that **COUNT 1**, the only claim now at issue in this case, is **DISMISSED** without prejudice against Defendants **ST. CLAIR COUNTY JAIL MEDICAL STAFF (nurse and nursing supervisors)** for failure to state a claim upon which relief may be granted.

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" in this case **on or before September 22, 2017.** Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the action shall be dismissed with prejudice. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915A. Further, a "strike" may be assessed against him. *See* 28 U.S.C. § 1915(g).

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action (*i.e.* 17-cv-00538-JPG). The pleading shall present the medical claim against each defendant in a separate count, and each count shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. **Plaintiff is strongly**

**encouraged to use generic designations in place of unknown defendants (*e.g.*, Nurse Jane/John Doe, Nursing Supervisor Jane/John Doe, etc.), instead of grouping all unknown defendants together as the Jail's medical staff.** He should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. He should *include only related claims* in his First Amended Complaint. Claims found to be unrelated to the Eighth Amendment medical needs claim will be severed into additional cases, new case numbers will be assigned, and additional filing fees will be assessed. To enable Plaintiff to comply with this order, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form along with a copy of this Order.

An amended complaint supersedes and replaces all prior complaints, rendering them void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading. Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than

**7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: August 25, 2017**

    *s/J. Phil Gilbert*
    **J. PHIL GILBERT**
    **United States District Judge**