# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DUSTIN MIDDENDORF, <br> # B85556, <br>                                  **Plaintiff,** <br> vs. <br> R. SMITH, and <br> STRAUB, <br>                                **Defendants.** | Case No. 17-cv-908-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

In *Middendorf v. McLaurn*, Case No. 17-cv-538-JPG (S.D. Ill. Oct. 4, 2017), Plaintiff Dustin Middendorf, an inmate in Sheridan Correctional Center, brought suit for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), two claims against Defendants Smith and Straub were severed from that initial action to form the basis for this action, Case No. 17-cv-908-JPG.

This case is now before the Court for a preliminary review of those claims pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the relevant allegations in Plaintiff's Complaint, the Court concludes that this action is subject to summary dismissal.

**The Complaint**

The allegations in Plaintiff's Complaint (Doc. 2) relevant to this severed action are as follows: on March 3, 2017, Officer Straub told Plaintiff he had authority "to do as he pleased" while searching Plaintiff's cell. (Doc. 2, p. 8). Officer Smith and Lieutenant Prinler took batteries that Plaintiff purchased from the commissary and other personal belongings without any explanation or documentation. *Id.* Officer Wagner called inmates "bitches" over the intercom in March 2017. *Id.* Officer Knipp told another inmate that he "would shoot him in the head." *Id.* As a result of this harassment and the lack of emergency call buttons in the cells, Plaintiff felt unsafe. *Id.*

On February 2, 2017, St. Clair County was allegedly subject to a "boil order." (Doc. 1, p. 9). At 8:00 a.m. on that date, Plaintiff began requesting fresh water. *Id.* Officer Green, who worked at the command center, was unresponsive. *Id.* A nurse who was passing out bottled water with medication refused to give Plaintiff any. *Id.* Officer Smith told Plaintiff that the

"administration" said he could drink the water because the boil order was not in effect for St. Clair County. *Id.* When Plaintiff asked why the nurse was passing out bottled water, Officer Smith said that the boil order "was over." *Id.* When Plaintiff asked the nurse if Officer Smith's statements were true, the nurse said, "if he says so." *Id.* Plaintiff began drinking the water. *Id.* At 11:00 a.m., Officer Green used the intercom to instruct inmates not to drink the water. *Id.* Signs to this effect were also posted, and bottled water was distributed at lunch. *Id.* Plaintiff began suffering from stomach pain and headaches in the hours after drinking the Jail's water. (Doc. 1, p. 9). He submitted sick call slips and "captain complaints" to complain about Officer Smith's actions. *Id.* Plaintiff received no response. *Id.*

## Discussion

In its Severance Order (Doc. 1), the Court designated the following counts to be severed into this *pro se* action. The parties and the Court will continue to use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 2 –** Officers Straub and Smith violated Plaintiff's constitutional rights when they harassed him.

**Count 4 –** Officer Smith subjected Plaintiff to unconstitutional conditions of confinement that posed a significant risk of serious harm to his present and future health when he instructed Plaintiff to drink the Jail's tap water on February 2, 2017, while St. Clair County was subject to a "boil order."

As discussed in more detail below, Counts 2 and 4 will be dismissed for failure to state a claim upon which relief may be granted.

## Count 2 - Harassment

The Due Process Clause of the Fourteenth Amendment governs Plaintiff's harassment claim, as he appears to have been a pretrial detainee, not a prisoner, during the relevant period. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citing *Kingsley v. Hendrickson*, 135 S. Ct.

2466, 2475 (2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013)). Although a convicted prisoner is entitled to freedom from conditions that amount to "cruel and unusual punishment," a pretrial detainee is entitled to be free from conditions that constitute "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). There is little practical difference between the standards that are applicable to pretrial detainees and convicted prisoners in this context. Claims brought under the Fourteenth Amendment are therefore "appropriately analyzed under the Eighth Amendment." *Dart*, 803 F.3d at 310 (citing *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013) ("[T]he protection afforded under [the Due Process Clause] is functionally indistinguishable from the Eighth Amendment's protection for convicted prisoners.")).

Plaintiff claims that Defendant Straub told him that he did not have rights and that Straub had the authority to do as he pleased. Plaintiff cites to this incident as an example of harassment he was subjected to at the Jail. However, in *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), the Seventh Circuit held that "simple verbal harassment" does not, standing alone, constitute cruel and unusual punishment. *Id.* at 612 (emphasis added). *See also Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009) ("[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment."); *Patton v. Przbylski*, 822 F.2d 697, 700 (7th Cir. 1987) (although unprofessional and inexcusable, racially derogatory remarks did not support a constitutional claim).

The Seventh Circuit recently revisited *DeWalt*'s holding in *Beal v. Foster*, 803 F.3d 356 (7th Cir. 2015). In Beal, the plaintiff alleged that the defendant, a sergeant, "'made verbal sexual comments directed towards inmate Brian Anthony, telling Ronald Beal to place his penis inside Brian Anthony,' and that 'on several prior occasions' [the defendant] had urinated in view of the

4

plaintiff (by leaving the bathroom door open) and of other inmates, looking at them 'while smiling.'" *Id.* at 358. Plaintiff also claimed that other inmates were calling him derisive terms for homosexuals; conduct that may have been "inspired or encouraged" by the defendant's comments and that he "experienced severe psychological harm" as a result of the defendant's harassment. *Id.* Plaintiff's Eighth Amendment claim pertaining to the defendant's conduct was dismissed at screening.

The Appellate Court concluded that the dismissal was premature and in doing so, clarified its prior holding in *Dewalt*. The Seventh Circuit explained that "purely verbal" harassment can, under certain circumstances, amount to cruel and unusual punishment. *Id.* at 357-58. To illustrate this point, the Appellate Court discussed the following hypotheticals:

> Suppose a prisoner is having severe headaches and he complains about them to a prison doctor, who writes him a prescription for a powerful drug. A malicious guard learns of this and tells the prisoner the following lie: "the doctor didn't tell you, but he told me: you have incurable brain cancer and will be dead in three months. Now let me tell you what he told me are the symptoms you will be experiencing as your cancer worsens." Or the guard, again lying, tells another prisoner: "I am sorry to have to inform you that your wife and children have been killed in a car crash."

*Id.* at 357. The Seventh Circuit noted that, despite being "purely verbal," the harassment in both examples was "as cruel" as cases involving "physical brutalization." *Id.* Accordingly, the Court reasoned, drawing "a categorical distinction between verbal and physical harassment is arbitrary." In other words, both physical and psychological pain can constitute cruel punishment. *Id.* at 357-58. In reaching this decision, the Court clarified that "simple," as used to describe verbal harassment in *DeWalt*, was the wrong word:

> [I]t is unclear what "simple" is intended to connote. In our hypothetical examples, the verbal harassment is "simple" in the sense of being brief, lucid, and syntactically simple. But what is simple can also, as in our two examples, be devastating. In DeWalt the plaintiff had alleged that a prison officer had "made a series of sexually suggestive and racially derogatory comments to [the plaintiff]

5

regarding certain female teachers at the prison schools." Id. at 610. This verbal harassment was directed, to a significant degree, at the female teachers rather than at DeWalt, and second-hand harassment may be too "simple" to state a claim of cruel and unusual punishment, whereas the lies in our two hypothetical cases were aimed directly and hurtfully at the prisoner. But "simple" is the wrong word; what is meant is "fleeting," too limited to have an impact.

*Beal*, 803 F.3d at 358.

With these principles in mind, the Appellate Court concluded the dismissal of the harassment claim was premature. In reversing and remanding, the Appellate Court specifically noted that the harassment allegedly resulted in severe psychological trauma, was repetitive, was not purely verbal (urinating is not verbal), may have endangered Plaintiff because it happened in front of other inmates, and may have carried more weight because the defendant was a sergeant.

Here, although Straub's conduct may constitute verbal harassment, it does not come close to the type of serious harassment that is actionable in a § 1983 claim. It was not repetitive, it was purely verbal, Plaintiff does not allege that it happened in front of other inmates, and Plaintiff does not attach any particular significance to the fact that Straub, and not another, made the alleged remarks. For these reasons, Count 2 will be dismissed without prejudice for failure to state a claim upon which relief may be granted as against Straub.

Plaintiff also cites Smith's removal of batteries and other items Plaintiff purchased at the commissary from his cell as acts of harassment. These allegations support no colorable constitutional claim against Smith, however. The only constitutional right that might be implicated by these facts is Plaintiff's right to be free from deprivations of his property by state actors without due process of law under the Fourteenth Amendment. To state a due process claim, Plaintiff must establish a deprivation of liberty or property without due process of law; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate,

6

post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8. Therefore, Plaintiff should pursue this claim in the Illinois Court of Claims. Count 2 will also be dismissed without prejudice as against Smith.

### Count 4 – Boil Order

A prison official's deliberate indifference to an inmate's health or safety may violate the Eighth Amendment's ban on cruel and unusual punishment, as well as a pretrial detainee's rights under the Fourteenth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The inmate must allege both an objective and a subjective component of the claim. To satisfy the objective component, the alleged deprivation must be "sufficiently serious"; that is, it must expose the inmate to a "substantial risk of serious harm." *Id.* (internal quotation marks omitted). To satisfy the subjective element, the prison official must have acted with deliberate indifference to the inmate's health or safety; the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. With respect to claims related to contaminated water, "[j]ust as correctional officers cannot deprive inmates of nutritional food, they cannot deprive inmates of drinkable water." *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015).

Plaintiff has failed to satisfy both components of his conditions of confinement claim based on the boil order at the Jail in February. As to the objective standard, Plaintiff claims that the Jail was under a boil order, so he requested fresh water at 8:00am on February 2, 2017. He claims he was denied drinking water when he asked the nurse for it that morning. He also claims that Defendant Smith later told him the water was safe to drink because the boil order did not

7

apply to St. Clair County, per the administration. After Plaintiff drank the water, C.O. Green made an announcement telling the inmates not to drink it. Plaintiff claims he received drinking water at lunch that day. He also claims he felt sick to his stomach and had a headache after drinking the water, but did not receive a response to his sick call requests or captain complaints.

The Court finds that the situation Plaintiff describes is not so objectively egregious as to rise to the level of a denial of the "minimal civilized measure of life's necessities" that would create a substantial risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Instead, he experienced the type of "occasional discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Lunsford v. Bennett*, 17 F.3d 1574,1581 (7th Cir. 1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). He alleges he experienced temporary pain, the severity and duration of which he does not explain in any detail. He also does not allege that drinking the contaminated water has caused him any lasting problems. He further claims he was provided with drinking water within a few hours of being alerted of the boil order. As such, the Court finds the objective component unsatisfied for Count 4.

With respect to the subjective component, Plaintiff's claim that Defendant Smith told him the water was safe to drink does not imply that Smith did this maliciously, with the intent to harm Plaintiff, or even with any knowledge that potential harm could result. Without more information, this Court will not infer Smith was deliberately indifferent toward Plaintiff.

Count 4 will therefore be dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that the Complaint is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNTS 2** and **4**, and Defendants **SMITH** and **STRAUB**, are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file a First Amended Complaint, stating any facts which may exist to support a cognizable § 1983 claim, within 28 days of the entry of this order (on or before **November 24, 2017**). Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g) because the dismissal herein is for failure to state a claim upon which relief may be granted.

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action (*i.e.* 17-cv-908-JPG). The pleading shall present each claim in a separate count, and each count shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. Plaintiff should *include only related claims* in his new complaint. Claims found to be unrelated to one another will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A. No service shall be ordered on any defendant until after the Court completes its § 1915A review of the First Amended Complaint.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

    **IT IS SO ORDERED.**
    **DATED: October 26, 2017**

                                      *s/J. Phil Gilbert*
                                      United States District Judge